IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH DUANE PARNELL,<br><br>Defendant. | Case No. 21-CR-00439-CVE |

**UNOPPOSED MOTION FOR PROTECTIVE ORDER
REGARDING CERTAIN DISCOVERY ITEMS**

The United States of America, by and through Clinton J. Johnson, Acting United States Attorney for the Northern District of Oklahoma, and Niko Boulieris, Assistant United States Attorney for said District, hereby files this Unopposed Motion for Protective Order Regarding Certain Discovery Items. Defense Counsel Mr. Theodore Hasse has reviewed this motion and has advised he does not oppose a protective order in this case.

Defendant Keith Duane Parnell is charged by Indictment with four counts of Aggravated Sexual Abuse of a Minor Under 12 in Indian Country and six counts of Sexual Abuse of a Minor in Indian Country. The Government will abide by its discovery obligations under Federal Rule of Criminal Procedure 16, *Brady*, and *Giglio*.

1

This case involves allegations that the Defendant sexually abused his two twin daughters, at the time minor females (M.V. 1 and M.V. 2). Discovery in this case includes a forensic interview of minors, interviews of M.V. 1 and M.V. 2, reports from the Oklahoma Department of Human Services, tribal enrollment records, and interviews with additional witnesses who may testify at trial. These reports and recordings contain multiple forms of sensitive personal information regarding the minor victims and witnesses in this case including identity, home addresses, personal phone numbers, and social security numbers. Due to the sensitive nature of this evidence and because much of the discovery, such as audio recordings, cannot be readily redacted to address these privacy concerns, the parties agree a Discovery Protective Order is appropriate for these materials.

The Court may "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The Supreme Court has noted that the courts may use protective orders to restrict the use of materials produced in discovery. Where appropriate, a trial court can and should place a defendant and his attorney under enforceable orders against unwarranted disclosure of the materials that they may be entitled to inspect. *Alderman v. United States*, 394 U.S. 165, 185 (1969).

Therefore, in order to protect the personal information and identity of the minor witnesses, victims, and other witnesses identified in this case, the parties agree on the following restrictions regarding the handling of any materials marked as protected that

apply to defense counsel and members of the defense team (as used herein, the "defense team" includes counsels of record, their employees, and their contractors):

    a) The defense team may not disseminate the investigative materials provided pursuant to discovery for any purpose other than those individuals identified in subparagraph b;

    b) The defense team may not show the transcripts and other investigative materials provided pursuant to discovery to anyone with the exception of the defendant, defendant's attorney of record in this case, and those persons employed by the attorney who are necessary to assist counsel of record in preparation for trial in this case, and not leave any protected material in the possession of the defendant or permit it to be copied;

    c) The defense team may not reproduce the documents, transcripts, and other investigative materials for dissemination to any persons or parties other than those persons employed by the attorney who are necessary to assist counsel of record in preparation for trial in this case, and shall maintain complete custody and control over them, including all copies;

    d) If the defense team wishes to file any protected material with the Court, or to make reference to its contents, including reference to the identity of any minors, the filing must be sealed, absent prior written permission of the government to file an unsealed version;

    e) In the event defense counsel is replaced by new defense counsel, defense counsel shall not turn over any discovery to new counsel without prior written permission of the government. The government will only grant permission when it is satisfied that new counsel has reviewed the terms of the Protective Order and has acknowledged that he/she is bound by them; and

    f) The provisions of this Protective Order shall not terminate at the conclusion of this prosecution.

WHEREFORE, the United States respectfully requests this Court authorize the proposed Protective Order Regarding Certain Discovery Items.

        CLINTON J. JOHNSON
        ACTING UNITED STATES ATTORNEY

        */s/ Niko Boulieris*
        Niko Boulieris, MSBA No. 0397389
        Assistant United States Attorney
        Northern District of Oklahoma
        110 West Seventh Street, Suite 300
        Tulsa, Oklahoma 74119
        918.382.2700

## Certificate of Service

I hereby certify that on October 21, 2021, I electronically submitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

    Theodore Hasse, Counsel for the Defendant

        */s/ Niko Boulieris*
        Niko Boulieris
        Assistant United States Attorney

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

944 F.2d 911 (Table)
944 F.2d 911 (Table), 1991 WL 180087 (10th Cir.(Colo.))
**Unpublished Disposition**
**(Cite as: 944 F.2d 911, 1991 WL 180087 (10th Cir.(Colo.)))**
<KeyCite History>

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Robert BAILEY, a/k/a James Robert Nicholson, Defendant-Appellant.
No. 90-1148.

Sept. 11, 1991.

D. Colo., No. 89-CR-395.

D.Colo.

AFFIRMED.

Before McKAY and SETH, Circuit Judges, and BROWN, Senior District Judge. [FN1]

ORDER AND JUDGMENT [FN2]

McKAY, Circuit Judge.

USDA conducted an investigation involving special agents and a civilian working as an undercover operative. On July 26, 1989, a special agent and the undercover operative entered Seven Seas Seafood. They asked defendant if he would redeem food stamps for cash. Defendant responded affirmatively and directed them to Ms. Nicholson who was in

**\*\*1** Defendant James Bailey appeals his conviction on four counts of unauthorized use of food coupons under 7 U.S.C. § 2024(b) (1988) and aiding and abetting another in the unauthorized use of food coupons under 18 U.S.C. § 2 (1988). Defendant filed a motion for a new trial that was denied by the district court. He was sentenced to three years imprisonment on each of the counts, to be served concurrently. This appeal followed.

I.

Defendant and co-defendant Sinnica Nicholson operated Seven Seas Seafood, a food store in Denver, Colorado. They were authorized by the United States Department of Agriculture to redeem food coupons. USDA initiated an investigation into the possible unauthorized use of food coupons after receiving a phone call from the manager of the bank where the defendant and Ms. Nicholson had opened an account. The bank manager informed USDA agents that he was suspicious of defendant and Ms. Nicholson due to the extremely large volume of food stamps they had deposited into their account and because they were withdrawing the cash shortly after making deposits.

another part of the store. Ms. Nicholson exchanged $200 worth of USDA food coupons for $100 in cash.

On August 4, 1989, the undercover operative entered Seven Seas Seafood and contacted defendant. They left the store together, entered defendant's automobile, and drove

1

behind the store into an alley. The undercover operative informed defendant that the food coupons she was about to exchange were stolen. Defendant paid $80 in cash for $160 in food coupons. The undercover operative also stated that she would have more food coupons to sell in the future. Defendant indicated that he was willing to purchase more coupons. This transaction was recorded through a device hidden on the undercover operative and was viewed by two federal agents.

The next exchange occurred on September 15, 1989. Following a phone conversation, co-defendant Nicholson met the undercover operative at the East Side Food Stamp Office in Denver. Ms. Nicholson exchanged $400 for $850 worth of USDA food coupons. The undercover operative saw defendant seated on a porch approximately one-half block from where the exchange occurred, and observed Ms. Nicholson walk toward him after the exchange was completed.

Defendant alleges numerous errors that warrant reversal and a new trial. His first argument is that the district court erred in denying his motion for a new trial due to the failure of the government to produce a complete set of grand jury transcripts. He maintains that this alleged failure by the government to comply with his discovery request for Jencks Act material prejudiced his trial preparation. The government asserts that the only grand jury testimony upon which the indictment was based was the testimony of USDA Special Agent Hopko, and that the complete grand jury transcript was provided to defense counsel.

Whether to grant a motion for a new trial is a decision within the sound discretion of the district court. We will not reverse the court's decision absent a plain abuse of that discretion. *United States v. McIntyre,* 836 F.2d 467, 472 (10th Cir.1987); *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir.1987).

On September 18, 1989, the undercover operative again met Ms. Nicholson at the East Side Food Stamp Office after arranging the meeting over the telephone. Ms. Nicholson arrived in a car driven by defendant. She and the undercover operative then exchanged $500 in cash for $1000 worth of food coupons. After the transaction, Ms. Nicholson got back into the car and drove away with defendant. This exchange was videotaped and observed by federal agents.

**\*\*2** The jury returned a verdict of guilty as to each of these transactions. Following a jury trial, appellant moved for a new trial on the basis of his allegation that the government failed to provide a complete transcript of the grand jury proceedings in violation of his discovery request. The district court denied the motion.

II.

The Jencks Act requires that the government, on motion of the defendant, produce any "statement" of a witness it has called that relates to the subject matter to which the witness has testified. 18 U.S.C. § 3500(b) (1988). This material includes a transcript of a witness's testimony before a grand jury. *Id.,* § 3500(e)(3); *United States v. Knowles,* 594 F.2d 753, 755 (9th Cir.1979).

Defendant points to passages in the grand jury transcript that he contends demonstrate the government did not produce the entire grand jury proceedings. The first example involves a statement by Agent Hopko that the USDA investigation of defendant stemmed from a Denver police complaint about defendant and Ms. Nicholson trafficking in food stamps and also possibly trafficking in narcotics. The government then asked a question referring to "these various episodes, that the Grand Jurors heard about involving drugs" and sought to

2

clarify that no exchange of drugs ever occurred. Record, vol. 1, doc. 22, exh. 1 at 3. Defendant asserts that this reference indicates that there was earlier grand jury testimony. "Various episodes," however, could just as easily have been a reference to Agent Hopko's statement about the Denver police complaint. Moreover, this excerpt does not demonstrate that the district court abused its discretion in failing to grant a new trial.

Defendant also maintains that the government's reference to Agent Hopko's prior **\*\*3** Finally, defendant asserts that the Assistant United States Attorney improperly tainted the grand jury when, in response to a grand juror's concern about the ability of untrustworthy individuals to obtain authorization to redeem food coupons, the AUSA mentioned that defendant had an extensive criminal history but was able to obtain authorization. The AUSA immediately cautioned the grand jury that they were not to take into consideration defendant's criminal history when deciding whether to return an indictment. *Id.* at 19-20. In light of the fact that this information came out in response to a grand juror's question and that the AUSA properly cautioned the grand jury, we cannot conclude that the district court abused its discretion in denying defendant's motion for a new trial.

### III.

Defendant maintains that the evidence was insufficient to support his convictions for wilfully assisting Ms. Nicholson in the unauthorized acquisition of food coupons on September 15, 1989, and September 18, 1989. Evidence is considered sufficient to support a criminal conviction if, viewing all the evidence--both direct and circumstantial--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Culpepper,* 834 F.2d 879, 881 (10th Cir.1987).

summary of nine food coupon transactions demonstrates that the witness had testified at a different grand jury proceeding about these transactions. *Id.* at 8. Agent Hopko, however, had summarized the trafficking of food coupons a few moments earlier during his testimony on that day, and, thus, his statement does not establish that there was prior grand jury testimony.

During the August 4, 1989, exchange of food coupons for cash, defendant stated that he was interested in acquiring additional food coupons in the future. Further, during the initial exchange on July 26, 1989, defendant directed the undercover operative and the special agent to Ms. Nicholson in order to consummate the exchange. In addition, evidence was presented showing that defendant and Ms. Nicholson were authorized to redeem food coupons, that they were co-signators on the bank account into which they deposited food coupons, that they both deposited coupons, and that they both withdrew large amounts cash from that account shortly after making deposits. Although defendant did not execute the transaction himself on September 18 but drove Ms. Nicholson to the site and drove away with her after the exchange was completed, a reasonable jury could infer that defendant willfully assisted Ms. Nicholson by transporting her to and from the site. Similarly, on September 15, defendant waited one-half block from where the transaction occurred, and Ms. Nicholson walked towards him after the exchange. Although there was no evidence showing that defendant transported Ms. Nicholson to the site, a permissible inference from all the evidence presented is that he wilfully assisted her. Viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, we conclude that the jury could find beyond a

3

reasonable doubt that defendant wilfully assisted Ms. Nicholson in the unlawful acquisition of food coupons on both September 15 and September 18.

## IV.

Defendant contends that the district court abused its discretion by admitting extrinsic evidence of prior inconsistent statements to impeach Ms. Nicholson. He argues that the
**\*\*4** During the government's case-in-chief, Ms. Nicholson stated that defendant did not give her money to purchase food coupons. The government sought to impeach her by introducing the testimony of government agents who testified that Ms. Nicholson had previously told them that the money came from defendant. Ms. Nicholson was given an opportunity to explain her prior statements, record, vol. 3, at 263, and the district court properly instructed the jury that the testimony of the government agents was for the limited purpose of impeaching Ms. Nicholson's credibility, and not to establish the truth of the prior statements. *Id.,* vol. 4 at 339. [FN3] Under these circumstances, we conclude that the district court did not abuse its discretion in admitting the agents' testimony of Ms. Nicholson's prior inconsistent statements.

## V.

Defendant also argues that the district court erred by permitting a government agent to testify about a conversation he overheard between Ms. Nicholson and the undercover operative. The conversation had been recorded, but the audio tape was inaudible. Defendant argues that the admission of the testimony violated Rule 1004 of the Federal Rules of Evidence because the tape itself was the best evidence of the conversation and a proper foundation was not presented as to why the tape could not be produced at trial. We must determine whether the district court abused its discretion in admitting the agent's testimony. *Alexander,* 849 F.2d at 1301.

evidence was improperly admitted because she did not have an adequate opportunity to explain the prior statements as required by Rule 613(b) of the Federal Rules of Evidence. The decision of whether to admit evidence is a matter committed to the discretion of the district court. *United States v. Alexander,* 849 F.2d 1293, 1301 (10th Cir.1988).

Defendant misapprehends the best evidence rule and the purposes for which the agent's testimony was offered. The best evidence rule requires the production of a writing, recording, or photograph in order to prove its contents. Fed.R.Evid. 1002. In this case, however, the government sought to establish the contents of Ms. Nicholson's conversation with the undercover operative, not the sounds preserved on the tape recording. Therefore, the best evidence rule is inapplicable. *See United States v. Rose,* 590 F.2d 232, 237 (7th Cir.1978), *cert. denied,* 442 U.S. 929 (1979); *United States v. Gonzales-Benitez,* 537 F.2d 1051, 1053-54 (9th Cir.), *cert. denied* 429 U.S. 923 (1976). The district court did not abuse its discretion in admitting the agent's testimony.

## VI.

Defendant's last two contentions are not persuasive. He argues that the district court erred in denying his motion for a mistrial based on a government witness's reference to a "criminal history check" in response to a question about the training of the undercover operative. Record, vol. 4, at 303. Taken in context, this comment referred to the screening of individuals to determine their fitness as undercover operatives. The district court's denial of defendant's motion for a mistrial was not an abuse of discretion. *See United States v. Peveto,* 881 F.2d 844, 859 (10th Cir.), *cert. denied,* 110 S.Ct. 348 (1989).

4

Finally, defendant contends that the cumulative effect of the alleged errors require that we vacate his conviction. In light of our determination that the district court did not err as defendant alleges, cumulative-error analysis is inappropriate. *See United States v. Rivera,* 900 F.2d 1462, 1470-71 (10th Cir.1990).

**\*\*5** The district court's judgment is AFFIRMED.

> FN1. The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.
>
> FN2. This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3.
>
> FN3. The extrinsic evidence presented was the testimony of the government agents based on their recollection of their earlier conversation with Ms. Nicholson. Record, vol. 4 at 341, 352-53. Contrary to defendant's position, Ms. Nicholson was not impeached by documentary evidence.

944 F.2d 911 (Table), 1991 WL 180087 (10th Cir.(Colo.)) Unpublished Disposition

END OF DOCUMENT