UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-CR-0439-CVE |
| ) | (24-CV-0519-CVE-MTS) |
| KEITH DUANE PARNELL, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is defendant Keith Duane Parnell's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 90). Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Defendant's § 2255 motion asserts three grounds for relief challenging his convictions and sentence, and each of defendant's claims is based on the alleged ineffective assistance of counsel. Dkt. # 90. Plaintiff has filed a response (Dkt. # 101) to defendant's motion, and defendant has filed a reply (Dkt. # 104). Defendant's § 2255 motion is ripe for adjudication.

**I.**

On October 5, 2021, a grand jury returned an indictment charging defendant with ten counts related to the sexual abuse of two of his daughters occurring between 1998 and 2007. Defendant was charged with aggravated sexual abuse of a minor under 12 in violation of 18 U.S.C. §§ 2241(c) and 2246 (counts one, two, six, and seven), and sexual abuse of a minor in violation of 18 U.S.C. §§

2243(a) and 2246 (counts, three, four, five. eight, nine, and ten). Dkt. # 2. Defendant made his initial appearance and he was represented by Theodore Michael Hasse as retained counsel. Dkt. # 7. The magistrate judge determined that defendant could be released on conditions pending trial. Dkt. # 10. The Court entered a scheduling order setting the jury trial for December 20, 2021, but the jury trial was subsequently continued to March 7, 2022 after the parties filed two motions to continue. Dkt. ## 19, 29.

The case was assigned for trial to a visiting judge, the Honorable Geoffrey Crawford, who held a pretrial conference on the morning of the first day of trial. Judge Crawford asked the parties about potentially sensitive matters that could arise during voir dire, and he reviewed the parties' stipulations concerning defendant's Indian status. Dkt. # 65, at 5-18. The primary issue in dispute at the pretrial conference was the admissibility of evidence concerning the living conditions of the alleged victims when they were children, and plaintiff's counsel argued that background evidence about the victim's home life tended to show they were reluctant to come forward with their claims of sexual abuse at an earlier age. Id. at 26-27. Hasse objected to this line of potential questioning, particularly as it related any alleged physical abuse of the victims, and Judge Crawford agreed that evidence related to poverty, neglect, and uncharged physical abuse would be excluded. Id. at 32. However, there was a distinct instance of alleged strangulation that Judge Crawford found was admissible as it was reasonably viewed as intrinsic evidence of the crimes charged. Id. There was no discussion of a potential guilty plea or plea offers made by plaintiff during the pretrial conference.

Plaintiff's opening statement provided background that is helpful to understand the allegations against defendant. In 2019, defendant's daughter, Kelsey Parnell Blaylock, came forward with allegations by means of a Facebook post that she and her twin sister, Jasmine Parnell, had been

2

sexually abused as children. Dkt. # 66, at 2. The alleged abuse began in 1998 when the victims were five years old and they lived with their father and mother in Pryor, Oklahoma. Id. The abuse continued until the girls were teenagers, and defendant allegedly stopped the sexual abuse only after there was a risk that one of the girls could become pregnant. Id. at 6-7. Kelsey claimed that she disclosed to a family member that she had been molested, and she was allegedly told to keep quiet to avoid embarrassing the family. Id. at 8. The victims allegedly attempted to live a "normal life" without disclosing the sexual abuse, but Kelsey Blaylock posted her allegations on Facebook in 2019. Id. at 8-9. A Pryor Police Department detective read the Facebook post and opened an investigation that resulted in defendant's arrest on charges of sexual abuse of his minor daughters. Id. at 9-10.

Hasse made an opening statement challenging the credibility of the accusers, and he argued that the length of time since the alleged sexual assaults took place substantially detracted from the believability of the allegations. Dkt. # 66, at 11-12. Hasse contended that Jasmine Parnell and defendant were engaged in a family dispute, and Kelsey Blaylock subsequently posted allegations of sexual abuse to cause "the maximum amount of chaos" in defense of her sister. Id. at 14. Hasse also argued that the conduct of the victims was generally inconsistent with their allegations of sexual abuse, such as allowing their father to babysit their children and acting in a loving manner toward their father. Id. at 16.

Hasse extensively cross-examined Kelsey Blaylock and Jasmine Parnell about their allegations. Hasse reviewed each of the incidents of alleged abuse, and he brought out inconsistencies with the victims' prior statements and their trial testimony. Dkt. # 55, at 120-21, 123. Hasse also focused on the age of the victims when the alleged abuse took place, because some

of the charges against defendant required that the victim be within a particular age range to sustain a conviction. Dkt. # 55, at 128-29. Hasse elicited testimony from Jasmine Parnell that she had an argument with defendant, because he did not spend enough time with his grandchild. Dkt. # 56, at 102. Jasmine Parnell also interacted with defendant on social media from 2012 to 2019 until Kelsey Blaylock publicized her allegations of sexual abuse. Id. at 125-29.

Defendant's sister, Stephanie Hendrickson, testified that Kelsey Blaylock moved in with Hendrickson while Blaylock was in high school. Id. at 183. Hendrickson stated that Blaylock made an allegation that her father had molested her, but Hendrickson claimed that the extent of the alleged molestation was that the defendant had "jumped in bed with [Blaylock] and asked her if she wanted a wet willie . . . ." Id. at 190. Hendrickson spoke to Blaylock's teacher and sought to have Blaylock meet with a counselor, but Hendrickson did not go to the police with Blaylock's allegations of sexual molestation. Id. at 192. Plaintiff's counsel attempted to inquire whether Hendrickson's communication with the school resulted in an investigation by the Oklahoma Department of Human Services (DHS), and Hasse objected to this line of questioning. Id. at 194. Hasse rejected Judge Crawford's offer to give the jury an instruction to disregard the question about a DHS investigation, because Hasse believed that this would call attention to the DHS investigation, even though the DHS investigation did not substantiate allegations of sexual abuse. Id. at 198. Plaintiff's counsel agreed to move on to another topic and refrain from asking any additional questions about the DHS investigation, and Hasse accepted the offer to move onto another question. Id. at 202-04.

At the close of plaintiff's case, Hasse moved for a judgment of acquittal on all counts due to lack of credibility of the victim's testimony. Dkt. # 67, at 61. Plaintiff moved for the dismissal of counts four, seven, and nine after certain facts did not come into evidence during witness

testimony. Id. at 62, 75-76. Judge Crawford granted plaintiff's request to dismiss counts four, seven, and nine, but he denied Hasse's motion to dismiss the remaining charges. Hasse called three witness to testify on behalf of defendant, and the defense rested. Both sides made closing arguments and each side was given 40 minutes to make their argument. Hasse argued that plaintiff presented a "flimsy case" based on the unreliable testimony of Kelsey Blaylock and Jasmine Parnell, and he made specific arguments as to why plaintiff had failed to prove its case as to each specific count. Id. at 200-02. Hasse argued that the alleged victims manufactured evidence of sexual abuse due to a growing family rift, and he claimed that no other family members witnessed any sexual abuse or believed that such abuse could have occurred. Id. at 206-14. Hasse's closing argument extended beyond the allotted 40 minutes, and Judge Crawford granted him additional time to come to a conclusion. Id. at 223-24. The jury deliberated and convicted defendant of all remaining counts.

Hasse filed written motions for judgment of acquittal and for a new trial following the jury verdict. Dkt. ## 49, 50. Judge Crawford entered an order (Dkt. # 57) denying the motions. Hasse moved to withdraw from his representation of defendant prior to the sentencing hearing. Judge Crawford granted the motion to withdraw, and the federal public defender's office was appointed to represent defendant. Dkt. # 60. Judge Crawford entered a judgment and commitment sentencing defendant to 420 months as to counts one, two, six, and eight and 180 months as to counts three, five, and ten, with the sentences for each count to run concurrently.

Defendant appealed his convictions and sentence to the Tenth Circuit Court of Appeals, and the Tenth Circuit permitted the federal public defender to continue its representation of defendant on appeal. Dkt. # 81. Defendant argued that plaintiff failed to provide sufficient evidence to support his convictions for counts three, eight, and ten, and he also argued that his sentence for count eight

exceeded the statutory maximum. The Tenth Circuit rejected defendant's arguments concerning the validity of his convictions, but the case was remanded for resentencing on count eight. Dkt. # 83. On November 6, 2023, Judge Crawford entered an amended judgment and commitment reducing the sentence for count eight to 180 months, but defendant's total term of imprisonment remained 420 months. Dkt. # 88. On October 28, 2024, defendant filed a motion to vacate, set aside, or correct sentence under § 2255 raising claims of ineffective assistance counsel. The motion was filed within one year of the date that defendant's conviction became final under 28 U.S.C. 2255(f)(1), and his motion is timely. The case was reassigned to the undersigned for the resolution of defendant's § 2255 motion. Dkt. # 91.

## II.

Defendant raises three claims of ineffective assistance of counsel in his § 2255 motion. Defendant argues that Hasse was aware of a witness, Marsha Downum, who claimed that she had overheard Kelsey Blaylock admitting that she fabricated the allegations against her father, but Hasse allegedly failed to investigate these allegations or call Downum to testify at trial. Dkt. # 90, at 4, 15-20. Defendant argues that his attorney failed to provide effective advice about the benefits of negotiating a plea deal with plaintiff, and he claims that Hasse exclaimed "no deal" without consulting with defendant when plaintiff's counsel attempted to make a plea offer at the pretrial conference. Id. at 5, 21-24. Finally, defendant generally alleges that Hasse was ineffective at all stages of the proceedings, particularly including Hasse's alleged failure to meet with defendant to discuss trial strategy and investigate potential exculpatory evidence. Id. at 7, 25-29.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v.

Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

### A.

Defendant claims that Hasse spoke to a witness, Marsha Downum, who was the principal of a school where Kelsey Blaylock was a student, and Downum allegedly overheard Blaylock confess that she made up the allegations against her father because he would not let her date a particular boy.

7

Dkt. # 90, at 16. Defendant's claim seems to have two components. He argues that trial counsel was ineffective for failing to investigate Downum's allegations and for failing to bring out evidence at trial that a state investigation allegedly revealed no evidence that Blaylock had been sexually abused. Id. Defendant also characterizes this issue as a <u>Brady</u>[1] violation, which is focused on the alleged failure of plaintiff's counsel to notify defendant of potential exculpatory evidence. Id. at 17–20.

The Court will initially consider the <u>Brady</u> component of defendant's claim. Plaintiff's counsel acknowledges that it was aware of a DHS investigation into allegations that defendant had sexually abused one of his children. In fact, the record is clear that plaintiff attempted to offer evidence about the investigation at trial, and Hasse objected to the admissibility of this evidence. Dkt. # 56, at 194-95. Plaintiff's counsel asked Hendrickson whether she had reported Blaylock's allegations of molestation to the police, and plaintiff's counsel inquired if Hendrickson was aware that the allegations had been reported to DHS. <u>Id.</u> at 194. Hasse immediately objected and asked Judge Crawford to exclude this evidence. Hasse was plainly aware that the investigation ultimately did not result in the filing of criminal charges against defendant, and plaintiff's counsel agreed to move on from this line of questioning. <u>Id.</u> at 195-204. Downum was not mentioned by any of the attorneys during the conference with Judge Crawford, and there is nothing about this discussion suggesting that either plaintiff's counsel or Hasse were aware of Downums' allegations.

In <u>Brady</u>, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady</u>, 373 U.S. at 87. In <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the Supreme Court held that <u>Brady</u>

---

[1] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

8

applies not only to "exculpatory" evidence but also to evidence that could be used to impeach a government witness. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987). When determining whether evidence is material, a court must consider in light of the entire record if "the omitted evidence creates a reasonable doubt that did not otherwise exist." United States v. Ahrensfield, 698 F.3d 1310, 1319 (10th Cir. 2012). The prosecution's obligation to produce exculpatory evidence applies not just to evidence of which a prosecutor has actual knowledge, but this duty extends to "the prosecutor's entire office, as well as law enforcement personnel and other arms of the state involved in investigative aspects of a particular criminal venture." McCormick v. Parker, 821 F.3d 1240, 1247 (10th Cir. 2016) (quoting Smith v. Sec. of New Mexico Dep't of Corr., 50 F.3d 801, 824 (10th Cir. 1995)).

The Court finds no evidence in the record that plaintiff was aware of Downum's allegations concerning Blaylock's alleged confession in which Blaylock admitted to making up allegations of sexual abuse, nor has defendant made any allegation that plaintiff was aware of Downum's allegations. Instead, defendant argues that plaintiff was obligated to produce exculpatory evidence that the DHS investigation failed to support or verify the allegations of sexual abuse against defendant. Dkt. # 90, at 19-20. The record clearly establishes that Hasse was aware of this evidence, and he adopted a trial strategy of preventing plaintiff from seeking to admit this evidence at trial. This does not wholly insulate Hasse's actions from judicial review, but the Court will review defense counsel's decisions concerning trial strategy with a substantial amount of deference to defense counsel. Hanson v. Sherrod, 797 F.3d 810, 827-28 (10th Cir. 2015). Hasse decided that it would

preferable not to call the jury's attention to the fact that there was a DHS investigation, and he believed that having the judge instruct the jury that the investigation was irrelevant would make it appear that the defendant was trying to hide the results of the investigation. Dkt. # 90, at 198. The Court finds that its was reasonable for Hasse to accept plaintiff's counsel's offer to simply move on from this issue. The record clearly shows that Hasse was aware of the information that defendant now alleges was suppressed by plaintiff, and defendant has failed to make a threshold showing for a Brady violation. Hasse made an informed choice to ask Judge Crawford to exclude evidence concerning the DHS investigation, and this choice was well within the range of Hasse's duty to provide competent legal representation for defendant.

Defendant also alleges that Hasse was ineffective for failing to investigate Downum's claim that Blaylock fabricated her claims of sexual abuse to punish her father for not allowing Blaylock to date a boy. Hasse expressly denies these allegations and he states that Downum never made him aware of these allegations. Dkt. # 101-1, at 2. Hasse also denies defendant's allegations that Hasse advised defendant that Downum's allegations would be inadmissible at trial, because Hasse was never made aware of Downum's allegations. Id. Defendant has provided an unsigned affidavit allegedly prepared by Downum containing allegations that she spoke to "Mr. Parnell's defense attorney," and she claims that she told the attorney that Blaylock admitted to fabricating the allegations of sexual abuse against defendant. Dkt. # 104, at 18-19. Defendant has also provided a copy of an email from Hendrickson to Hasse in which Hendrickson identified "Marsha Whalen" as the principal who put Blaylock in contact with a counselor. Id. at 21. The email also states that "Kelsey told her she lied because she was mad at her dad over a boy." Id.

None of the evidence cited by defendant contradicts Hasse's statement that he was unaware of Downum's specific allegations that she overheard a conversation in which Blaylock admitted to lying about the sexual abuse committed by defendant. Hasse was clearly aware that school officials had referred Blaylock to a counselor and that a DHS investigation resulted from Blaylock's allegations. Hasse's cross-examination of Kelsey Blaylock and Jasmine Parnell showed that he conducted a reasonable investigation into the background and timing of the allegations against defendant, and he questioned both witnesses about inconsistencies in their behavior towards their father and their allegations of sexual abuse when they were children. Hasse adopted a trial strategy of keeping evidence of the DHS investigation from being admitted at trial, because he believed that the facts concerning the DHS investigation could cause the jury to speculate about the outcome of the investigation. Dkt. # 55, at 194-98. Downum states that she was the person who reported allegations of sexual abuse to DHS, and this would have opened a line of questioning that Hasse was specifically seeking to avoid. Dkt. # 104, at 18. Hasse states that Downum's allegations about Kelsey Blaylock's fabrication of sexual abuse claims would have been "memorable" and he would have pursued this matter, but he denies that he was made aware of Downum's allegations before trial. Dkt. # 101-1, at 2. Even if Hasse had explored at trial Downum's allegation of fabricated claims of sexual abuse, defendant has not shown that this would have been likely to change the outcome of the trial. As the Court has noted, any testimony by Downum would have opened the door to extensive questioning about a DHS investigation into allegations of sexual abuse against defendant, and the evidence was cumulative of other evidence offered by Hasse suggesting that Kelsey Blaylock and Jasmine Parnell used allegations of childhood sexual abuse to fuel an ongoing family dispute. The Court also notes that Downum's claim of fabricated sexual abuse goes only to

11

Kelsey Blaylock's allegations of abuse, and Downum's testimony would have had no bearing on Jasmine Parnell's credibility. The Court finds that defendant has not shown that Hasse was ineffective for his handling of evidence concerning a DHS investigation or possible testimony by Downum casting doubt on Kelsey Blaylock's motives for making allegations of sexual abuse.

**B.**

Defendant argues that his attorney failed to explain the potential benefits of seeking a plea agreement instead of going to trial, and he implies that plaintiff made a plea offer that was not conveyed to him. Dkt. # 90, at 5, 21-24. Defendant argues that it is likely he would have plead guilty pursuant to a plea agreement if he had been advised that he could have received a reduced sentence, although the record is not clear whether a plea agreement was actually offered by plaintiff. Id. at 23-24. Defendant also contends that plaintiff's counsel attempted to make a plea offer at the pretrial conference, and Hasse allegedly said "No deal! We're going to trial!" Id. at 5. Plaintiff responds that Hasse did advise defendant about the possibility of seeking a plea agreement and the contents of a standard plea agreement, but Hasse does not recall that he received a plea offer for defendant. Dkt. # 101, at 11. Hasse clearly recalls that defendant expressed no interest in pleading guilty pursuant to a plea agreement, and defendant maintained his innocence throughout the proceedings. Id.

A defendant does not have a constitutional right to receive a plea offer but, if a plea offer is made, a defendant has the right to the effective assistance of counsel when reviewing the plea offer and deciding whether to accept it. Lafler v. Cooper, 566 U.S. 156, 164, 168 (2012); United States v. Watson, 766 F.3d 1219 (10th Cir. 2014). Defense counsel has a duty to communicate any formal plea offer to a defendant when the offer would potentially result in a reduced sentence or conviction

on a lesser charge. <u>Missouri v. Frye</u>, 566 U.S. 134, 145 (2012). A defendant must show that but for his attorney's ineffective performance that:

> the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in face were imposed.

<u>Lafler</u>, 566 U.S. at 164.

Defendant's reply clarifies that he did maintain his innocence and he did not want to plead guilty, but he asserts that his attorney was ineffective for rejecting an unsolicited plea offer without first consulting with defendant. Dkt. # 104, at 10. Defendant states:

> In his affidavit, Trial Counsel claimed correctly that I did not want to plead guilty to horrendous crimes I did not commit, and that I was not interested in having him solicit or "seek" a plea agreement (Dkt. #101-1 at 3), however, I contend that not wanting to plead guilty and not being interested in having him seek a plea deal does not convey an edict or a directive to reject or decline any offers made that were unsoli[c]ited. I never directed Trial Counsel to reject or decline to accept a plea offer the Government wants to extend.

<u>Id.</u> Based on this clarification, it appears that defendant is not challenging Hasse's affidavit to the extent that Hasse states that he advised defendant "regarding plea agreements and possible outcomes." Dkt. # 101, at 2. Defendant also acknowledges that Hasse correctly recalled that "[d]efendant directed [Hasse] not to seek a plea offer from the Government." <u>Id.</u>; Dkt. # 104, at 10.

The Court has reviewed the transcript of the pretrial conference and the complete jury trial, and there is no evidence supporting defendant's argument that Hasse rejected a plea offer made by plaintiff without consulting with defendant. Defendant claims that plaintiff attempted to make a plea offer at the pretrial conference, and Hasse allegedly said "No deal! We're going to trial!" Dkt. # 90, at 5. There is no record of Hasse making this statement or anything similar at any point during the

pretrial conference or jury trial. In fact, there is no evidence that plaintiff ever offered defendant a plea agreement at any stage of the proceedings. It would have been preferable if the trial judge had made a record with defendant concerning any plea agreements that had been offered by plaintiff, but the absence of such a record does not create a factual dispute requiring an evidentiary hearing. Defendant's allegation that plaintiff made a plea offer at the pretrial conference is unsupported by the transcript. Based on defendant's clarification, it is apparent that he directed Hasse not to seek a plea offer from plaintiff, because defendant intended to maintain his innocence throughout the proceedings. Defendant has not shown that Hasse committed ineffective assistance of counsel in relation to seeking a plea offer or rejecting an unsolicited offer without first consulting with defendant, and ground two of defendant's § 2255 motion is meritless.

## C.

Defendant claims that Hasse failed to adequately prepare for trial, and he argues that Hasse failed to impeach the witnesses against him and offer potentially exculpatory evidence.[2] Dkt. # 90, at 7. Defendant states that Hasse requested two continuances of the trial date, because Hasse was unprepared for trial and had not met with defendant for a sufficient amount of time to prepare a defense. Dkt. # 104, at 12-13. Plaintiff responds that Hasse spent a substantial amount of time preparing for trial and he regularly communicated with defendant by phone to keep defendant advised about the status of the case. Dkt. # 101, at 13. Hasse denies that he requested a continuance

---

[2] Many aspects of defendant's third ground for relief have already been considered and rejected by the Court. Defendant reasserts his argument that Hasse should have called Downum as a witness to testify at trial that Kelsey Blaylock fabricated her allegations of sexual abuse, and he claims that Hasse failed to explain the potential benefits of a plea bargain. Dkt. # 90, at 7, 26. These arguments have already been considered and rejected and will not be discussed in relation to defendant's third ground for relief.

of the trial date due to a lack of preparedness, and plaintiff argues that the record shows that Hasse was fully prepared impeach and call witnesses, make appropriate objections to plaintiff's evidence and witness testimony, and file appropriate motions during the course of the proceedings. Id. at 13-14.

In response to defendant's allegations, Hasse prepared an affidavit stating that he billed 93.5 hours over the course of his representation of defendant. Dkt. # 101-1, at 3. Hasse states that defendant preferred to communicate with him by phone, because Hasse's office is located in downtown Tulsa and it was difficult for defendant to come to the office to meet in person. Id. Hasse recorded 18 time entries reflecting that he conferred with defendant by phone or in person, and Hasse believes there would have been more communications with defendant that were brief or incidental that were not recorded in his billing records. Id. at 4. Hasse states that he was always prepared to meet with defendant and he did not use meetings to review discovery materials with defendant. Id. at 5. Hasse recalls that they reviewed photographs that defendant had brought with him at one meeting, and at a later meeting they reviewed potential trial exhibits. Id. Hasse states that he never requested a continuance due to lack of preparation, and he contends that he was fully prepared to examine witnesses and present evidence at trial. Id.

The Court will construe defendant's third ground for relief as a claim that Hasse was generally ineffective in preparing a defense and that he was not ready to represent defendant at trial. The record shows that Hasse filed a motion for continuance of the jury trial on December 1, 2021 due to the large volume of discovery materials produced by plaintiff, and defendant executed a speedy trial waiver for the time period between December 1, 2021 and January 31, 2022. Dkt. # 19. The parties filed a joint motion to continue the jury trial to March 2022 after plaintiff learned that

it had not produced all of the discovery materials to Hasse. Dkt. # 29, at 2. Plaintiff had also assigned a new attorney to handle the case, and the new attorney needed additional time to prepare for trial. Id. at 3. Both requests for continuance were granted, and the trial began on March 7, 2022. Defendant was not detained pending trial and the continuances did not result in an extension of pretrial custody. The Court has reviewed the full trial transcript, and defendant's allegations that Hasse was unprepared for trial are not supported by the record. Hasse extensively cross-examined both victims and established that they outwardly maintained a friendly relationship with defendant. Hasse called three witnesses to testify on defendant's behalf, including one of his daughters, Kayla Parnell. Kayla Parnell testified that she never saw her father molest or sexually abuse her sisters, nor had she personally been abused by her father. Dkt. # 67, at 91, 102. Defendant's brother, Anthony Parnell, and defendant's son, Branden Parnell, both testified that they had never witnessed any sexual abuse of the victims nor had either victim made such claims to them. Id. at 154-78. The trial transcript show that Hasse made appropriate objections to witness testimony and evidence offered by plaintiff, and Hasse made timely and thorough motions under Rule 29 for a judgment of acquittal at the appropriate stages of the case.

      The Court finds no support in the record for defendant's claim that Hasse was unprepared for trial, and Hasse's representation of defendant fell within the range of competent representation. The record shows that there were two continuances of the trial primarily to allow Hasse sufficient time to review the discovery materials, and it is reasonable for counsel to request additional time to prepare for trial in such situations. Hasse's conduct during trial reflects that he was adequately prepared to cross-examine witnesses and present a defense, and the evidence generally supports Hasse's statements that he spent a substantial amount of time preparing for trial. It appears that

defendant may now disagree with certain strategic decisions made by Hasse, but that is not a basis for the Court to vacate or set aside defendant's convictions. Defendant has not shown that Hasse's representation fell outside of the range of reasonable professional assistance, and defendant's third ground for relief is denied.

### III.

The Court must also consider whether to issue a certificate of appealability (COA) on any issue raised in defendant's § 2255 motion. Pursuant to 28 U.S.C. § 2253, a defendant is required to obtain a COA before appealing a final order in a proceeding under 28 U.S.C. § 2255. Section 2253(c) instructs that the court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A defendant can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a COA should not issue because defendant has not made a substantial showing of the denial of a constitutional right. The Court does not find that the issues raised by defendant are debatable among jurists or that the Tenth Circuit would resolve the issues differently, and defendant has not made a substantial showing of the denial of a constitutional right.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 90) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability as to any issue raised in defendant's § 2255 motion.

**DATED** this 5th day of December, 2025.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE